UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TIEESHA HOUSE,

                Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-6041 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Tieesha House ("plaintiff"), appearing pro se, brings this action against The Commissioner of the Social Security Administration ("defendant" or "Commissioner"), pursuant to 42 U.S.C. § 405(g), seeking review of defendant's determination that plaintiff is not entitled to Supplemental Security Income under Title XVI of the Social Security Act ("SSA"). Defendant has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Def.'s Mem in Support of Mot. J. Pls. (Doc. No. 13).  For the reasons set forth below, defendant's motion is DENIED, and the matter is remanded to the Commissioner for further proceedings consistent with this Memorandum and Order.

## PROCEDURAL HISTORY

      Plaintiff filed a claim for Supplemental Security Income under Title XVI of the SSA on September 5, 2014.  (Tr. 101-106) Plaintiff alleged an onset of disability on January 1, 2013 as a result of a cerebral aneurysm, migraine headaches and vertigo, PMR, osteoarthritis, rotator cuff tear, abnormal gait, high blood pressure, hypothyroidism and obesity.  (Tr. 125-126) Plaintiff's claim was denied at the initial level on October 14, 2014.  (Tr. 59-70) She requested a hearing before an administrative law judge on December 16, 2014.  (Tr. 71-76, 77-79) A hearing was held before ALJ Mark Solomon on November 2, 2016. (Tr. 29-48) The claim was denied by ALJ

Solomon in a written decision dated January 24, 2017 (Tr. 12-27).  The Appeals Council denied plaintiff's request for review on August 16, 2017, making ALJ Solomon's decision the final determination in the case.  (Tr. 1-6).

For purposes of this decision, and because of the limited issues addressed herein, the Court will focus on the evidence and testimony regarding plaintiff's condition of cerebral aneurysm with resulting headaches and vertigo, as well as the medical records of Dr. Larissa Lempert, Dr. Johnathan Perks and Dr. Stuart Green.

## BACKGROUND

### I.     Plaintiff's Disability Claim

As noted above, plaintiff filed her claim alleging disability due in large part to the effects of an unruptured cerebral aneurysm.  (Tr. 125-126).  It is undisputed that plaintiff suffered from an aneurysm and the ALJ found that she had the severe impairments of history of aneurysm, hypothyroidism, vertigo, asthma, osteoarthritis of the bilateral knees and obesity.  (Tr. 17) The ALJ additionally found that plaintiff alleged the non-medically determinable impairments of arthritis in the left shoulder and right wrist as well as arthritis in her hands and fingers.  (Tr. 17-18)

Prior to the hearing plaintiff was required to submit evidence regarding her medical treatment and to name all doctors and medical facilities from which she received treatment. Plaintiff filed a disability report on September 5, 2014 in which she stated that she had received treatment for her aneurysm from Dr. Maqler of Long Island College Hospital and from Johnathan Perks, MD of Brooklyn Hospital, and received treatment for her chest pain and hypothyroidism at Coney Island Hospital. (Tr. 124-133.) She filed Recent Medical Treatment form dated February 17, 2016 in which she stated that she had been treated by Dr. Lidiya

Makoua, Dr. Larissa Lempert, Dr. Ronald Chase and Dr. Wong. (Tr. 174.) She stated that Dr. Lempert treated her for the aneurysm. (*Id*.) On October 18, 2016, plaintiff filed an updated Recent Medical Treatment form. (Tr. 187.) Plaintiff advised that she had seen Dr. J. Perks[1], Dr. Stuart Green[2], Dr. Larissa Lempert[3] and Dr. Lauren Wong. (*Id*)

## II.   Plaintiff's Waiver of Counsel and the ALJ's Assurance He Would Develop the Record

Plaintiff appeared for her hearing. She was not represented by counsel and the ALJ was required to advise plaintiff of her right to be represented:

> "…the law does not require that you be represented and if you wish to, you can represent yourself. If you choose to represent yourself, it is my obligation as the Judge to do everything that is reasonable to try to obtain all such evidence as I think is necessary to properly resolve your case… I'm going to tell you what your choices are today, and then you're going to tell me what you prefer to do. If you wish to represent yourself we are going to complete all the testimony today. Once such testimony is complete, if I think I have enough to make a Decision, I'll review what I have and send you a decision in the mail…If I think based upon your testimony I do need to obtain additional information, I will try to obtain that information before making my Decision" (Tr. 32)

Based upon the ALJ's representations, plaintiff opted not to be represented by an attorney and to represent herself. (Tr. 33.)

After the hearing, the ALJ sent two letters to each of the doctors listed in plaintiff's last Recent Medical Treatment form: Dr. Lauren Wong, Dr. Stuart Green, Dr. Larissa Lempert and Dr. Johnathan Perks. (Tr. 453, 455-460, 482, 486-491, 511, 515-520, 523, 527-532, 494, 498-503, 535, 539-544, 546, 550-555.). [Of the doctors, Dr. Wong was the only source that returned records. (Tr. 453-481.)] It is noted that the letter to Dr. Green was returned as incorrectly

---

[1] According to public information available form SUNY Downstate Medical, Dr. Perks is a board-certified neurologist with a specialty in headaches and brain disorders.
[2] According to public information available from Brooklyn Hospital, Dr. Green is the chair of the Rheumatology department and is a board-certified rheumatologist.
[3] Dr. Lempert's internet website identifies her as a board-certified neurologist with specialty in headache, pain, epilepsy and attention deficit/hyperactivity disorder.

addressed. (Tr. 505-510.) No effort was made to re-contact Dr. Green's office or to verify the correct address. The ALJ did not send a subpoena to any of the doctors.

## STANDARD OF REVIEW

### I. Review of a Denial of Social Security Benefits

In reviewing the final determination of the Commissioner, a court does not determine *de novo* whether the claimant is disabled. *See Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998). Rather, the court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir.2000) (quoting 42 U.S.C. § 405(g)). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126, (1938)). Where the Commissioner makes a legal error, a "court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984) (citation omitted). An ALJ's failure to apply the correct legal standards is grounds for reversal. *See Townley,* 748 F.2d at 112 (citation omitted).

### II. Eligibility for Disability Benefits

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),

4

1382c(a)(3) (A); *see, e.g., Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir.2004), *amended on other grounds,* 416 F.3d 101 (2d Cir. 2005). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see, e.g., Butts,* 388 F.3d at 383.

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir.1983) (*per curiam*).

The Social Security Administration's regulations require a five-step analysis for determining whether a claimant is disabled:

[1] First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

[2] If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities.

[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work

5

experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.

[4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

[5] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir.1998); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I. ALJ Solomon's Decision

ALJ Solomon engaged in the required five-step analysis. At the first step, ALJ Solomon found that plaintiff did not engage in substantial gainful activity since the time of her alleged onset date of April 5, 2014. (Tr. 17.) At step two, ALJ Solomon found that plaintiff was severely impaired by the following ailments: History of aneurysm, hypothyroidism, vertigo, asthma, osteoarthritis of the bilateral knees and obesity. (Tr. 17.) ALJ Solomon also found that plaintiff alleged the following non-medically determinable impairments: arthritis in the left shoulder and the right wrist and arthritis in the hands and fingers. (Tr. 17-18.) At step three, ALJ Solomon found that these impairments did not meet or qualify as the medical equivalent of any of the listed impairments in Appendix 1 of the regulations and specifically considered listing 3.02 and 1.02. (Tr. 18.) ALJ Solomon then assessed plaintiff's residual functional capacity, which must be based on all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1520(e).

The ALJ found that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 C.F.R. § 416.967(a). The residual functional

capacity assessment provided that plaintiff could "perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that the claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. Claimant should avoid exposure to respiratory irritants and avoid working at unprotected heights or with hazardous machinery. (Tr. 18.) At the fourth step, ALJ Solomon found that plaintiff had no past relevant work. (Tr. 22.) At the fifth step, ALJ Solomon determined that there existed a significant number of jobs in the national economy that plaintiff can perform within the range of "sedentary work." (Tr. 22-23.). Accordingly, ALJ Solomon found that plaintiff was not disabled for purposes of the SSA and was thus ineligible for benefits. (Tr. 23.)

## II.     Errors of Law in the ALJ's Decision

In reviewing the record, the Court finds that the ALJ erred in failing to properly develop the record with regard to the treatment records of Dr. Lempert and Dr. Perks, who treated plaintiff for her cerebral aneurysm and resulting headaches. Specifically, the ALJ erred in not issuing a subpoena for the records of those particular medical sources.

### A.  Duty to Develop the Record

According to the SSA regulations, the Commissioner must "make every reasonable effort" to assist the claimant in developing a "complete medical history." 20 C.F.R. § 404.1512(d). Furthermore, "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. This duty ... exists even when, as here, the claimant is represented by counsel." *Pratts v. Chater,* 94 F.3d 34, 38 (2d Cir.1996) (internal citations and quotations omitted).

Thus, if the claimant's medical record is inadequate, it is "the ALJ's duty to seek additional information from the [treating physician] *sua sponte.*" Schaal, 134 F.3d at 505; *see* Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."). The ALJ's affirmative duty comports with this Circuit's observation that "the Social Security Act is remedial or beneficent in purpose, and, therefore, to be broadly construed and liberally applied." Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.1975) (internal quotations omitted). The Act's "intent is inclusion rather than exclusion." Marcus v. Califano, 615 F.2d 23, 29 (2d Cir.1979).

The duty to develop is heightened when a claimant appears pro se before an administrative law judge. "The Commissioner of Social Security is not obligated to provide a claimant with counsel, but where a claimant proceeds *pro se,* the ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980) (internal quotation marks omitted); *accord Cruz,* 912 F.2d at 11 (describing an ALJ's "heightened duty"). In view of this heightened duty, the limited, yet clear, requirements for notification enacted by Congress seem both sensible and likely adequate." *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 509 (2d Cir. 2009).

It is of note that plaintiff waived her right to counsel following the ALJ's assurance that he would do what was necessary to develop the record in absence of an attorney representing plaintiff. (Tr. 32-33) The ALJ did not, however, develop the medical record with regard to plaintiff's primary complaint – a cerebral aneurysm with resulting migraine headaches. The ALJ failed to subpoena medial evidence from the only sources who were treating plaintiff for those conditions, and summarily dismissed plaintiff's complaints regarding those conditions. While it

8

is true that the ALJ wrote to request the records twice, we find that this was not enough under the circumstances to fulfill his obligation to develop the record.

Moreover, in his decision the ALJ only briefly addressed plaintiff's migraine headaches stating that, "the headaches are consistent with objective medical evidence of an aneurysm in her brain. However, the evidence does not show significant treatment or debilitating symptoms…After a significant treatment gap the claimant sought emergency treatment for headache in March 2016…" (Tr. 19.)

While the ALJ acknowledges the basis for the condition and acknowledges a gap in treatment records, he does not acknowledge that the gap in treatment records is, quite likely, a gap in the records only and not a true gap in treatment. In doing so, his own failure to obtain the records regarding the condition led to his conclusion that these conditions did not result in "significant treatment or debilitating symptoms."

In its brief, the Commissioner argues that the ALJ was able to make a determination of the claimant's functional capacity because the record held "sufficient evidence". (Docket No. 13 at 15.) The Commissioner argues that the ALJ sufficiently accounted for plaintiff's headaches by limiting her to sedentary work (*id*.), and argues that the ALJ met his duty to develop the record by sending two letters to plaintiff's treating sources asking for records. (*Id*. at 18.) The Commissioner's arguments are not persuasive on the basis of this record.

There was a clear gap in the treatment record which the ALJ himself noted in stating that there was no evidence with regard to plaintiff's migraine headaches. One reason for that gap appears clear – the medical records of Dr. Lempert and Dr. Perks, from which she received treatment for the headaches, were never obtained. Having identified that there was a gap in the record with regard to plaintiff primary condition, the ALJ should have made greater effort to

9

obtain those records. He had the ability to issue a subpoena for the records with no cost and little effort on behalf of the Administration but failed to do so.

In this specific circumstance, the ALJ should have subpoenaed Dr. Lempert and Dr. Perks' records. To assist the ALJ in developing the record, the SSA's regulations authorize the ALJ to issue subpoenas for documents that are "material to an issue at the hearing" when "it is reasonably necessary for the full presentation of a case." 20 C.F.R. §§ 404.950(d), 416.1450(d). The Second Circuit has explained that "[t]he plain language of this section clearly places the decision to issue a subpoena within the sound discretion of the ALJ." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). But this discretion is not unlimited, and the ALJ "cannot ignore essential available medical evidence." *Outman v. Comm'r of Soc. Sec.*, No. 1:16-CV-00988 (MAT), 2018 WL 3688312, at *2 (W.D.N.Y. Aug. 2, 2018) (citations omitted). The ALJ commits "harmful error" when she fails to subpoena medical records that are "reasonably necessary" to the claimant's case. *Id.* (citations omitted); *see also Sweeney v. Colvin*, No. 3:13-CV-703 (JCH), 2015 WL 5684024, at *2 (D. Conn. Sept. 28, 2015) ("[T]o establish prejudice in an ALJ's failure to subpoena records generally, plaintiff must show that the records in question would undermine the ALJ's decision.").

Here, the facts presented show harmful error and clearly establish prejudice. The ALJ did not properly consider the evidence regarding plaintiff's migraine headaches and the Commissioner's assertion that the ALJ accounted for those headaches by limiting the claimant to sedentary work is unpersuasive. [Without the records to document the nature and severity of plaintiff's symptoms and limitations, it was impossible to fairly evaluate plaintiff's claims.] While it is true that migraine headaches cause physical limitations, as is commonly known, they may equally cause such non-exertional limitations as time off task, limits in concentration, and

10

sensitivity to light and noise. A simple limitation to sedentary work does not address all of the symptoms and limitations which plaintiff's headaches might have caused.

The circumstances here are precisely those envisioned by the regulations at 20 C.F.R. §§ 404.950(d), 416.1450(d). While this Court does not extend its finding to rule that an ALJ is under a general obligation to issue a subpoena for records, it is clear that on the specific facts of this case and in this specific circumstance, the ALJ erred in failing to do so. Plaintiff's primary diagnosis was cerebral aneurysm with resulting migraine headaches and with the exception of one narrative letter written by Dr. Lampert and contained in a different treating source's file, there was no evidence obtained from either of the two specialists who treated plaintiff for the aneurysm or migraines. As such, the ALJ failed to properly develop the record in this case.

### B. Validity of the Vocational Testimony

The Commissioner argues that the ALJ properly relied upon vocational expert testimony in drafting the claimant's residual functional capacity. (Docket No. 13 at 18.) The Court disagrees.

An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as "there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion," *see Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983), and accurately reflect the limitations and capabilities of the claimant involved, *see Aubeuf v. Schweiker,* 649 F.2d 107, 114 (2d Cir.1981). *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

The vocational expert's testimony was given on the basis of a hypothetical that was flawed as it wholly failed to consider the medical evidence with regard to plaintiff's cerebral

11

aneurysm and migraine headaches. For the reasons discussed above, that testimony cannot serve as a basis for the ALJ's decision.

## CONCLUSION

For the reasons herein, defendant's motion for judgment on the pleadings is DENIED, and the matter is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. The Clerk of Court is respectfully directed to enter Judgment accordingly, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
　　　　September 26, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge